Slip Op. 11- 131

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| BASF CORP., | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Before: | WALLACH, Judge |
| v. | : | Court No.: | 02-00558 |
| | : | | |
| | : | | |
| UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

[Plaintiff's Motion for Summary Judgment is DENIED.]


Dated:        October 19, 2011

Barnes, Richardson & Colburn (Frederic D. Van Arnam, Jr. and Helena D. Sullivan) for Plaintiff BASF Corp.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Saul Davis); and Edward N. Maurer and Sheryl A. French, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, Of Counsel, for Defendant United States.

**OPINION**

**Wallach, Judge:**

**I**
**INTRODUCTION**

The court again examines the principal use of certain imported beta-carotene products.

This action involves classification under the Harmonized Tariff Schedule of the United States

("HTSUS") of the following goods: Betavit® 10% and Betavit® 20% ("Betavits").  U.S.

Customs and Border Protection ("Customs") classified these goods under HTSUS Heading 2106,

which includes "food preparation not elsewhere specified or included." Plaintiff BASF Corp.

("Plaintiff" or "BASF") argues that these goods should instead be classified under HTSUS

Subheading K3204, which includes "[b]eta-carotene and other carotenoid coloring matter," or,

alternatively, under either HTSUS Heading 2936 as a "provitamin," or HTSUS Heading 3003,

which includes "medicaments." Plaintiff also argues that beta-carotene used as a provitamin

falls under the Pharmaceutical Appendix. Defendant United States ("Defendant") asserts these

goods are classifiable under one of two other subheadings under HTSUS Heading 2106, subject

to the sugar quota, or, alternatively, under another subheading of HTSUS Heading 3204.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a). Plaintiff seeks summary

judgment in its favor. Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion").

Defendant opposes summary judgment and seeks trial. Defendant's Opposition to Plaintiff's

Motion for Summary Judgment ("Defendant's Opposition"). Because genuine issues of material

fact affect the proper classification of Plaintiff's imported merchandise, Plaintiff's Motion for

Summary Judgment is DENIED.


**II**
**BACKGROUND**

**A**
**Procedural History**

This action covers the goods imported by Plaintiff between September 2000 and August

2000. Amended Summons, Doc. No. 7. Customs classified the goods under HTSUS Subheading

2106.90.99[.]98 and assessed duties at the rate of 6.4% ad valorem. Id.; Complaint, Doc. No. 16

¶ 35; Amended Answer to Complaint, Doc. No. 24 ¶ 35 ("Answer"). Plaintiff timely filed its

protest asking Customs to reclassify the goods under HTSUS subheading K3204.19.35.

Amended Summons.  The duty rate applicable to this subheading is Free. HTSUS subheading

K3204.19.35.

After Customs denied the protest, Plaintiff initiated the instant action on August 16,

2002. See Summons, Doc. No. 1.  On April 22, 2010, Plaintiff moved for summary judgment in

its favor, Plaintiff's Motion, and on August 30, 2010, Defendant moved for denial of Plaintiff's

Motion, Defendant's Opposition.

On December 23, 2010, the court issued Roche Vitamins v. United States, 750 F. Supp.

2d 1367 (CIT 2010), denying summary judgment in a similar case because of conflicting

evidence as to the principal use of beta-carotene in the product at issue. Roche Vitamins, 750 F.

Supp. 2d 1373.  On January 11, 2011, the court ordered parties in the present case to submit

supplemental briefing on "the effect of the court's opinion in Roche Vitamins, Inc. v. United

States." Order, Doc. No. 77.  Plaintiff and Defendant submitted supplemental briefs on March

16, 2011. Plaintiff's Supplemental Memorandum of Law Re: The Effect of the Court's Holding

in Roche Vitamins, Doc. No. 84 ("Plaintiff's Supplemental Memo"); Defendant's Response to

the Court's Order of January 11, 2011, Doc. No. 85 ("Defendant's Supplemental Memo").


**B**
**Description Of The Imported Goods**

Betavits are mixtures containing synthetic beta-carotene, which is a carotenoid. Plaintiff's

Statement of Material Facts Not in Dispute, Doc. No. 44  ¶¶ 7-8 ("Plaintiff's Undisputed Facts");

Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute, Doc. No. 65 ¶¶

7-8 ("Defendant's Response to Plaintiff's Undisputed Facts").  Beta-carotene is an organic

coloring matter which imparts color in the spectrum of yellow to orange to red.  Plaintiff's

Undisputed Facts ¶ 9; Defendant's Response to Plaintiff's Undisputed Facts ¶ 9.  Beta-carotene

is also a provitamin A. Plaintiff's Undisputed Facts ¶ 10; Defendant's Response to Plaintiff's

Undisputed Facts ¶ 10.  Additionally, it is undisputed that beta-carotene is not water soluble; that

as a pure crystal, it is pyrogenic, unstable, and prone to oxidative degradation and

decomposition; and that when it oxidizes, its provitamin A activity and ability to color are

destroyed. Plaintiff's Undisputed Facts ¶¶ 11-13; Defendant's Response to Plaintiff's Undisputed

Facts ¶¶ 11-13.  As to the use of these products, both parties seem to agree that, at least in theory,

these products can be used for effective coloration in food and beverages but that they were

marketed for use not as a colorant but as a provitamin A in multivitamin tablets, capsules, and

other vitamin products. Plaintiff's Undisputed Facts ¶¶ 28-30; Defendant's Response to

Plaintiff's Undisputed Facts ¶¶ 28-30.

However, the parties seem to disagree as to the exact ingredients in these products, what

the ingredients do, and how these products are made. See generally Plaintiff's Undisputed Facts;

Defendant's Response to Plaintiff's Undisputed Facts.

**III**
**STANDARD OF REVIEW**

In a classification case, "the court construes the relevant (competing) classification

headings, a question of law; determines what the merchandise at issue is, a question of fact; and

then" determines "the proper classification under which [the merchandise] falls, the ultimate

question in every classification case and one that has always been treated as a question of law."

Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1366 (Fed. Cir. 1998).

The court will grant a motion for summary judgment "if the pleadings, discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." USCIT R. 56(c); see

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Accordingly, summary judgment in a classification case is appropriate only if "the material facts of what the merchandise is and what it does are not at issue." Diachem Indus. Ltd. v. United States, 22 CIT 889, 893 (1998) (citation omitted).  "The court may not resolve or try factual issues on a motion for summary judgment." Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048 (1988) (citation omitted), aff'd, 867 F.2d 1404 (Fed. Cir. 1989). Instead, it must view the evidence "in a light most favorable to the nonmovant" and draw "all reasonable inferences . . . in the nonmovant's favor." Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988).

The court determines the proper classification de novo by applying the HTSUS General Rules of Interpretation ("GRIs") and the HTSUS Additional U.S. Rules of Interpretation ("ARIs") in numerical order. See Faus Grp., Inc. v. United States, 581 F.3d 1369, 1372 (Fed. Cir. 2009); Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999); Rollerblade, Inc. v. United States, 112 F.3d 481, 483-84 (Fed. Cir. 1997).[1]  GRI 1 provides in relevant part that "classification shall be determined according to the terms of the [HTSUS] headings and any relative section or chapter notes." GRI 1 (2000-2002).  "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." Carl Zeiss, 195 F.3d at 1379 (citing Simod Am. Corp. v. United States, 872 F.2d 1572, 1576 (Fed. Cir. 1989)).

"To assist it in ascertaining the common meaning of a tariff term, the court may rely on its own understanding of the terms used and may consult lexicographic and scientific authorities,

---

[1] Classification decisions made by Customs may be entitled to some weight in accordance with Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944). See United States v. Mead Corp., 533 U.S. 218, 234-35, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001); Michael Simon Design, Inc. v. United States, 30 CIT 1160, 1163, 452 F. Supp. 2d 1316 (2006).

dictionaries, and other reliable information sources." <u>Baxter Healthcare Corp. v. United States</u>,

182 F.3d 1333, 1337-38 (Fed. Cir. 1999) (citation omitted).  Although not dispositive, the

Explanatory Notes ("ENs") maintained by the Harmonized System Committee of the World

Customs Organization do "clarify the scope of the HTSUS subheadings and offer guidance in

their interpretation." <u>Franklin v. United States</u>, 289 F.3d 753, 758 (Fed. Cir. 2002) (citation

omitted); <u>see</u> H.R. Conf. Rep. No. 100-576, 100th Cong., 2d Sess. 549 (1988) at 26-27, <u>reprinted</u>

<u>in</u> 1988 U.S.C.C.A.N. 1547, 1582.


**IV**
**DISCUSSION**

Classification of the Betavits under Heading 3204 depends on the resolution of genuine

issues of material fact. <u>See</u> <u>infra</u> Part IV.A.  Classification of the Betavits under an alternative

heading also depends on the resolution of genuine issues of material fact. <u>See</u> <u>infra</u> Part IV.B.

**A**
**Classification Of The Betavits Under Heading 3204 Depends On The Resolution of**
**Genuine Issues Of Material Fact**

**1**
**<u>Principal Use Analysis</u>**


HTSUS Heading 3204 and the relevant subheadings provide as follows:

| | |
|---|---|
| <u>3204</u> | Synthetic organic coloring matter, whether or not chemically defined; preparations as specified in note 3 to this chapter based on synthetic coloring matter; |
| . . . . | |
| <u>3204.19</u> | Other, including mixtures of coloring matter of two or more of the subheadings 3204.11 to 3204.19: |
| . . . . | |
| <u>3204.19.35</u> | Beta-carotene and other carotenoid coloring matter |
| . . . . | |

Heading 3204, HTSUS (2000).  The court has previously held that the term "coloring matter" in

Heading 3204 is a principle use provision. E.M. Chems. v. United States, 20 CIT 382, 386, 923

F. Supp. 202 (1996) (denying summary judgment because of conflicting evidence as to the

principal use of thermochromic liquid crystals); Roche Vitamins, 750 F. Supp. 2d 1373 (denying

summary judgment because of conflicting evidence as to the principal use of beta-carotene); see

also BASF Corp. v. United States (BASF I), 29 CIT 681, 684, 391 F. Supp. 2d 1246 (2005)

(classifying beta-carotene product under subheading 3204.19.35, emphasizing the purpose of the

product), aff'd, BASF Corp. v. United States (BASF II), 482 F.3d 1324 (Fed. Cir. 2007).

Here, the court must conduct a "principal use" analysis, i.e., "'ascertain the class or kind

of goods which are involved and decide whether the subject merchandise is a member of that

class.'" Roche Vitamins, 750 F. Supp. 2d at 1374 (quoting E.M. Chems., 20 CIT at 388).  "The

purpose of 'principal use' provisions in the HTSUS is to classify particular merchandise

according to the ordinary use of such merchandise, even though particular imported goods may

be put to some atypical use." Primal Lite, Inc. v. United States, 182 F.3d 1362, 1364 (Fed. Cir.

1999).  The Federal Circuit describes ARI 1(a) as "call[ing] for a determination as to the group of

goods that are commercially fungible with the imported goods." Id. at 1365.  Traditionally, courts

undertaking the principal use analysis examine multiple factors that include:

> (1) the general physical characteristics of the merchandise;
> (2) the expectation of the ultimate purchasers;
> (3) the channels of trade in which the merchandise moves;
> (4) the environment of the sale (e.g. the manner in which the
>     merchandise is advertised and displayed);
> (5) the usage of the merchandise;
> (6) the economic practicality of so using the import; and
> (7) the recognition in the trade of this use.

E.M. Chems., 20 CIT at 388 (citing United States v. Carborundum Co., 63 CCPA 98, 102, 536

F.2d 373 (1976) (subsequent history omitted)).

Plaintiff asserts that "even if this subheading were being considered as a use provision, the class or kind of goods at issue is formulated beta-carotene, and this Court has already determined in the Lucarotin® decision that the principal use of beta-carotene is as a colorant." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Doc. No. 46 at 11 ("Plaintiff's Memo") (citing BASF I, 29 CIT at 685).  Defendant counters that Betavits are "specially designed and intended to be used in making dietary supplements and nutritional tablets." Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Doc. No. 65 at 23 ("Defendant's Memo").  In determining whether Betavits are "commercially fungible" with either beta-carotene coloring matter or ingredients for dietary supplements, this court will consider multiple factors. Primal Lite, 182 F.3d at 1365; see E.M. Chems., 20 CIT at 388 (citing Carborundum, 63 CCPA at 102).

As in Roche Vitamins,[2] the Defendant finds support for its argument in that "the manner in which the merchandise is advertised" and "the usage of the merchandise" indicate that Betavits have not been used for nor are marketed for use as a colorant, but only for use as a

---

[2] Plaintiff likens Betavits to Lucarotin® 1%, the product at issue in BASF I, but also notes that "[t]he Betavit products are also similar in formulation to, and commercially interchangeable with, the Roche Vitamins BetaTab product before this court" in Roche Vitamins. Plaintiff's Memo at 4-5 n.1.  Roche Vitamins is factually and legally similar to the current case before the court.  In Roche Vitamins, the court denied Plaintiff's motion for summary judgment holding that "genuine issues of material fact affect the proper classification of Roche's imported merchandise." Roche Vitamins, 750 F. Supp. 2d at 1369.  The court described the merchandise at issue in that case as follows:

> Beta-carotene is an organic colorant that has provitamin A activity.  Beta-carotene must be combined with other ingredients to be used as a colorant or provitamin A.  As explained by Roche's expert, the imported merchandise sold under the trade name BetaTab 20% is a reddish brown/orange powder that consists of 20% by weight synthetic beta-carotene crystalline . . . .  BetaTab 20% was developed, designed, and marketed as a source of beta-carotene for purposes of sale to makers of dietary supplements (tablets and capsules) who seek a high beta-carotene/provitamin A content and antioxidant activity.  The Roche marketing materials for BetaTab 20% do not mention any intent or use . . . as a food colorant. . . .  Any colorant function in the actual use of BetaTab 20% is unintentional or ancillary.

Id. at 1369-70 (citations omitted).  Roche sought classification of its merchandise under HTSUS subheading 3204, HTSUS subheading 2936, or as a provitamin under the Pharmaceutical Appendix. Id. at 1373.  The court held that "as in E.M. Chems., that material facts remain in dispute concerning the principal use analysis precludes summary judgment for classification under HTSUS Heading 3204," as well as under the other subheadings and the Pharmaceutical Appendix. Id. at 1378.

provitamin A in multivitamin tablets, capsules, and other vitamin products. E.M. Chems., 20 CIT

at 388 (citing Carborundum, 63 CCPA at 102); Plaintiff's Undisputed Facts ¶¶ 28-30;

Defendant's Response to Plaintiff's Undisputed Facts ¶¶ 28-30.

With regards to Plaintiff's comparison to BASF I, a key distinguishing feature of BASF I

is that the product at issue was "sold for use as a food colorant" and was "used to impart color to

a wide variety of foods, including fruit drinks and other beverages, yellow cakes, bagels, and

breads." BASF I, 29 CIT at 685.  Indeed, at trial the court determined that "[c]ustomers do not

buy Lucarotin® for any purpose other than delivery of a beta-carotene colorant." Id.  Plaintiff

argues that the court found, in BASF I, "as a matter of fact that beta-carotene is a substance used

principally for coloration, a finding of fact left undisturbed by the Federal Circuit." Plaintiff's

Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion for Summary

Judgment, Doc. No. 72 at 5 ("Plaintiff's Reply").  The court instead found, in that case, that

"[b]eta-carotene is a known food colorant and its primary use is as a colorant. In larger doses,

beta-carotene can be a dietary supplement as an antioxidant." BASF I, 29 CIT at 686.  The

Federal Circuit, in turn, stated: "We note the concern of the amici curiae that if this formulation

is denied access to the Pharmaceutical Appendix, other beta-carotene products may be wrongly

classified. That concern is unfounded, for Lucarotin® 1% is unambiguously not imported as a

vitamin product." BASF II, 482 F.3d a 1327 n.3.[3]

However, just as in Roche Vitamins, with regards to "general physical characteristics,"

E.M. Chems., 20 CIT at 388 (citing Carborundum, 63 CCPA at 102), it is undisputed that

---

[3] In the present case, as Defendant points out, "BASF admitted that it had no knowledge or information that would indicate that the Betavit, in its condition as imported, was used as a food colorant, and BASF did not know of any use of these products as food colorants." Defendant's Memo at 5 (citing deposition of Lutz End, Doc. No. 65-5 at 22-23, 77-78).

Betavits can be used as a colorant. Plaintiff's Undisputed Facts ¶ 9; Defendant's Response to

Plaintiff's Undisputed Facts ¶ 9.

Plaintiff has not satisfactorily applied the principal use factors to the classification of

Betavits.[4]  Defendant requests judgment in its favor in this matter but also states that because

"summary judgment proceedings are not intended to resolve factual disputes, and recognizing

that the 'principle use' issue was not clearly addressed by either party, the Court, in the

alternative, may provide the parties with an opportunity, as it is doing in Roche, to conduct

discovery on the class or kind and principal use." Defendant's Supplemental Memo at 3-4.

Plaintiff's Motion cannot be granted because of outstanding genuine issues of material

fact as to whether Betavits belongs to the class or kind of goods principally used as coloring

matter. See ARI 1(a), HTSUS (2002).[5]

**2**
**Congressional Intent**

Plaintiff also argues that whether Heading 3204 is a principal use provision is immaterial

because congressional intent is clear as to the classification of beta-carotene; "[w]here Congress

intends that the goods be classified under a heading, it is unnecessary to determine whether the

provision is a use or eo nomine provision and labeling it either might 'generate, not eliminate,

ambiguity contrary to Congressional intent.'" Plaintiff's Memo at 16 (citing Esco Mfg. Co.v.

---

[4] Defendant briefly conducts an analysis of the Carborundum factors as applied in this case, arguing that "at least five out of seven factors (2-5 and 7) clearly support a finding that the merchandise fits within the class or kind of goods principally used as ingredients in dietary supplements.  The other two factors (1 and 6) are somewhat ambiguous, but lend support to our position." Defendant's Memo at 24-25.

[5] Plaintiff tries to otherwise distinguish the present case from Roche Vitamins.  For example, according to Plaintiff, information submitted concerning the "beadlet form issue" was not before the court in Roche Vitamins, and this information "establishes that the physical form of the Betavits is consistent with the physical form of merchandise within the class or kind of goods used as coloring matter." Plaintiff's Supplemental Memo at 3.  The arguments asserted by Plaintiff are fact-intensive, contested, and suitable for trial; these arguments support rather than undermine the denial of summary judgment at this time.

<u>United States</u>, 63 CCPA 71, 75, 530 F.2d 949 (1976); <u>De Laval Separator Co. v. United States</u>, 1

CIT 144, 148, 511 F. Supp. 810 (1981); <u>Steward-Warner Corp. v. United States</u>, 6 CIT 302, 304-

05, 577 F. Supp. 25 (1983), <u>rev'd on other grounds,</u> 748 F.2d 663 (Fed. Cir. 1984)).  Plaintiff

argues that congressional intent "to classify all beta-carotene products in subheading 3204.19.35,

regardless of their use as a colorant, a provitamin or an antioxidant" is "evident." <u>Id.</u> at 11-12.

Plaintiff turns to the language of the HTSUS, ENs, and "the history of the classification of

vitamins/provitamins in the U.S." to support this proposition. <u>Id.</u> at 11-17.   Plaintiff summarizes:

> Congress enacted an <u>eo nomine</u> subheading for beta-carotene
> under a use heading covering synthetic organic coloring matter,
> and incorporated exclusionary note 2(f) to Chapter 29 to direct
> classification away from heading 2936 as a provitamin in favor of
> heading 3204 as a colorant.  It then associated the "K" designator
> to 3204.19.35 so as not to deprive duty-free treatment to beta-
> carotene formulations used as a provitamin . . . .  Therefore, the
> Betavits® are classified in subheading K3204.19.35 pursuant to
> the principal use of beta-carotene, which Congress has defined in
> the HTSUS to be as a colorant.

Plaintiff's Reply at 6.  Plaintiff concludes "[t]he reading of these Chapter Notes and ENs result in

the inescapable conclusion that while beta-carotene would normally be classified under 2936 as a

duty-free provitamin . . . the drafters of the tariff have designated its primary use as coloration

and so synthetic beta-carotene formulations must end up in 3204.19.35 whether used for

coloration or as a provitamin." Plaintiff's Memo at 14-15.

Defendant asserts a different interpretation of the provisions at issue, arguing that

"Heading 3204, in general, and subheading 3204.19.35, in particular, mandates that the product

must be, at the very least, designed and used as colorants," based on the plain meaning of the

term "coloring matter" found in the heading. Defendant's Memo at 16.  Defendant supports this

argument by turning to "the language and the design of the statute as a whole." <u>Id.</u> at 16-18.

Defendant notes Heading 3204 for the purposes of this case encompasses "synthetic organic

coloring matter, whether or not chemically defined" and that the court in BASF I "held that the

plain meaning of 'coloring matter' in 3204.19.35 meant that 'products within the scope of the

subheading would be beta-carotene or other carotenoid colorants of a particular kind or for a

particular purpose.'" Id. at 15 (quoting BASF I, 29 CIT at 692) (emphasis in the original).

Defendant contrasts Heading 3204 with Heading 2936 which encompasses "[p]rovitamins and

vitamins, natural or reproduced by synthesis (including natural concentrates)" and argues that

Heading 2936 is limited by Chapter 29 Note 2(f) which specifically excludes "synthetic organic

coloring matter." Id. at 16.  Defendant also points out the significance of the ENs to Heading

3204:

> The Explanatory Notes for Heading 3204 specifically list, at p.
> 454, a variety of carotenoids that are encompassed by that
> provision, including "β-carotene."  . . . Explanatory Notes
> continue, at p. 455, that: Substances which in practice are not used
> for their dyeing properties are excluded (Chapter 29), e.g.,
> azulenes (heading 29.02); trinitrophenol (picric acid) and dinitro-
> ortho-cresol (heading 29.08); hexanitrodiphenylamine (heading
> 29.21); methyl orange (heading 29.27); acriflavine, bilirubin,
> biliverdin and porphyrins (heading 29.33).

Id. at 17-18 (emphasis removed).

It is not clear that Congress intended for all beta-carotene products to be classified as

colorants.  Plaintiff states that "[b]ecause the language of the HTSUS gives a roadmap of

Congress' intent on classification of formulated beta-carotene, this Court must follow the basic

tenet of statutory construction that a statute be construed to carry out the legislative intent of its

drafters, and to determine this intent the plain meaning of the statutory language is paramount."

Plaintiff's Memo at 16 (citing Intercontinental Fibers, Inc. v. United States, 64 CCPA 31, 33,

C.A.D. 1179, 545 F.2d. 744 (1976).  However, Defendant offers a valid and alternate reading

based on the plain meaning of the language and statutory construction: "To be classifiable in the

'beta-carotene' subheading, a good must first be coloring matter. Stated otherwise, a subheading

cannot be used to expand the scope of a heading, and to be classifiable in a subheading, the

goods must meet the criteria of the main heading." Defendant's Memo at 23 (citing

Carborundum, 63 CCPA at 100-101).[6] "Unless it be shown that a literal construction leads to an

anomaly or is contrary to Congressional intent . . . the statutory language must govern."

Intercontinental Fibers, 64 CCPA at 33 (citation omitted).[7]

Additionally, Plaintiff's assertion of clear congressional intent is insufficient for the court

to disregard its previous two holdings that "the term 'coloring matter' in Heading 3204 is a

principle use provision" and that a principle use inquiry is therefore necessary. Roche Vitamins,

750 F. Supp. 2d at 1376 (discussing Roche's arguments as to the K designation) (quoting E.M.

Chems., 20 CIT at 387). "That determination was based on Heading 3204's language, Federal

Circuit precedent, and EN 32.04." Id. The court has repeatedly held that the term "coloring

matter" in Heading 3204 is a principal use provision and continues to do so. Id. at 1373 (denying

summary judgment because of conflicting evidence as to the principal use of beta-carotene);

E.M. Chems., 20 CIT at 386 (denying summary judgment because of conflicting evidence as to

---

[6] As has been noted by the court previously, "Carborundum was decided prior to the introduction of the HTSUS. The case interpreted statutory provisions of the predecessor to the HTSUS-the Tariff Schedules of the United States ("TSUS") . . . . Decisions under the TSUS are not controlling on decisions made under the HTSUS, but TSUS decisions are instructive when interpreting similar HTSUS provisions." BASF Corp. v. United States, 30 CIT 227, 247 n.16, 427 F. Supp. 2d 1200 (2006) (citing E.M. Chems., 20 CIT at 386 n.5). Here, the proposition put forth by Defendant, that "a subheading cannot be used to expand the scope of a heading, and to be classifiable in a subheading, the goods must meet the criteria of the main heading," references the General Interpretive Rule 10(c)(i) under the TSUS, a provision not found in the HTSUS, and is therefore perhaps persuasive but not controlling. Defendant's Memo at 23 (citing Carborundum, 63 CCPA at 100-101).

[7] Plaintiff relies on BASF Wyandotte Corp. v. United States, 855 F.2d 852 (Fed. Cir. 1988). Plaintiff is correct that the Federal Circuit stated "[w]hile the use of a product may be considered in determining the classification of that article . . . little weight should be placed on the industry using the item. The pertinent consideration is not who the user of the product is." Plaintiff's Memo at 17 (quoting BASF Wyandotte, 855 F.2d at 853-54). However, the Federal Circuit stated this proposition in response to arguments made by the government asserting that a product could be defined by the industry using it. BASF Wyandotte, 855 F.2d at 853-54. Here, the product is not being used by two different industries but rather might be used in two different ways. See Plaintiff's Undisputed Facts ¶ 28-30; Defendant's Response to Plaintiff's Undisputed Facts ¶ 28-30.

the principal use of thermochromic liquid crystals). See also BASF I, 29 CIT at 684 (classifying

beta-carotene product under subheading 3204.19.35, emphasizing the purpose of the product).

**B**
**Classification Of The Betavits Under An Alternative Heading Also Depends On The**
**Resolution Of Genuine Issues Of Material Fact**

Plaintiff in the alternative moves for summary judgment to classify Betavits under either

HTSUS Heading 2936 as a "provitamin," or HTSUS Heading 3003, which includes

"medicaments." Plaintiff's Motion at 1.

In Roche Vitamins, the court extensively discussed the legal basis and factual disputes

between the parties regarding classification as a provitamin under HTSUS Heading 2936, Roche

Vitamins, 750 F. Supp. 2d at 1379-82, the key issue being whether the product's "ingredients

'render it particularly suitable for specific use'" versus "'general use,'" id. at 1382 (quoting Gen.

EN 29.36(d)).  The court need not revisit the same arguments here.  Plaintiff tries to distinguish

the present case by, for example, implying that the record as a whole, unlike in Roche Vitamins,

contradicts Defendant's expert witness' assertions as to the particular suitability of Betavits for

specific versus general use. Plaintiff's Supplemental Memo at 5.  However, as noted above, the

arguments asserted by Plaintiff are fact-intensive, contested, and suitable for trial; these

arguments support rather than undermine the denial of summary judgment at this time. See supra

n.7.  As Defendant notes, "[a]lthough the details of the composition and manufacturing of

BetaTab 20% differ from those of the Betavit products, and the parties' evidence is slightly

different in the two cases, the Court's finding that there is a material issue of fact whether the

BetaTab ingredients render the product particularly suitable for specific use applies equally to the

Betavit merchandise in BASF." Defendant's Supplemental Memo at 5-6.

14

Finally, Plaintiff briefly argues in the alternative that "if this Court finds that the Betavit®

products do not fall within the scope of subheading 3204.19.35, then it could classify them as

medicaments within the scope of 3003.90.00." Plaintiff's Memo at 20.[8]  Quoting the language of

Heading 3003.90.00, Plaintiff states that the "language of the heading refers to medicaments

consisting of two or more constituents which have been mixed together for therapeutic or

prophylactic uses, not put up in measured doses or in forms or packings for retail sale." Id. at 21.

Plaintiff also asserts that "[b]eta-carotene has a prophylactic use in preventing certain diseases

including vitamin A deficiency disease and Betavit® 10% or 20% would be an efficient form of

beta-carotene product to treat such a deficiency disease." Id.

Defendant, however, "[a]vers that beta-carotene preparations would not be used to treat

vitamin A deficiency disease, as vitamin A itself would be used.  There is no scientific evidence

Betavit 20% or Betavit 10% has ever been used in the treatment of vitamin A deficiency disease.

BASF does not market these products for this use." Defendant's Response to Plaintiff's

Undisputed Facts ¶ 34.  Defendant also asserts that BASF "has completely failed to demonstrate

that Betavit is a product that is sold and used for its therapeutic or prophylactic properties."

Defendant's Memo at 11.  Defendant argues instead that "expert testimony from Dr. Russell

shows that the Betavit is at best a dietary or nutritional supplement with no proven therapeutic or

prophylactic properties." Id.[9]  Defendant argues, therefore, that "Betavit is not encompassed by

BASF's alternative claim for classification in subheading 3003.90.00, precisely because the plain

---

[8] Because the Plaintiff in Roche Vitamins did not move for summary judgment under heading 3003.90.00, HTSUS, classifying the product as a medicament, the court did not address this heading.  See Roche Vitamins, 750 F. Supp. 2d 1367.

[9] Specifically, and more limited than that asserted by Defendant, Dr. Russell stated "there is no credible scientific evidence of any therapeutic or prophylactic benefit of beta-carotene use as an antioxidant." Deposition of Robert Mitchell Russell, M.D., Doc. No. 65-1 at 8.

terms of Heading 3003 mandate that the medicaments encompassed by that heading constitute products for therapeutic or prophylactic use." Id.

The court has previously found 3003.90.00 to be principal use provision. Warner-Lambert Co. v. United States, 28 CIT 939, 954, 341 F. Supp. 2d 1272 (2004) ("Before concluding that the Halls drop is a vehicle for vitamin C's therapeutic or prophylactic properties, however, it must have been proven that the product's principal use is for its vitamin C content and for the properties associated therewith."), aff'd, 425 F. 3d 1381, 1384 (Fed. Cir. 2005) ("While heading 3004 identifies the products it covers as 'medicaments,' it further limits the category to those products for specified uses.  Heading 3004 thus is a 'use' classification, and according to the tariff schedules' 'Additional Rule of Interpretation' 1(a), 'the controlling use is the principal use.'") (citing Primal Lite, Inc., 182 F.3d at 1363-64).  Here, the Plaintiff has not "demonstrate[d] that Betavit is a product that is sold and used for its therapeutic or prophylactic properties." Defendant's Memo at 11.[10]

---

[10] The court in Roche Vitamins also rejected Plaintiff's argument that the duty-free rate under the Pharmaceutical Appendix affects the intended scope of Heading 3204. Roche Vitamins, 750 F. Supp. 2d at 1376-77. Plaintiff persuasively revisits this argument at length here, Plaintiff's Memo at 23-30; however, for the same reasons as in Roche Vitamins, Plaintiff's argument is also rejected in this case at this time.  Roche Vitamins at 1378 ("Unless and until BetaTab 20% is classified under Heading 3204, these issues need not be resolved."); see Plaintiff's Memo at 23-30.  For the same reasons, Defendant's requested alternate classification under HTSUS subheading 3204.19.40 is rejected at this time. Roche Vitamins at 1378 ("Roche's claim for duty-free entry under the [Pharmaceutical Appendix] and Defendant's requested alternate classification under HTSUS subheading 3204.19.40 both depend on BetaTab 20% first being classified under Heading 3204."); see Defendant's Memo at 2.

**V**
**CONCLUSION**

For the above stated reasons, Plaintiff's Motion for Summary Judgment is DENIED.[11]


__/s/ Evan J. Wallach____
Evan J. Wallach, Judge


Dated: October 19, 2011
       New York, New York

---

[11] Oral argument was held on September 20, 2011.  At the close of proceedings, the court by minute order GRANTED Plaintiff's application to reopen discovery.  Discovery is reopened until January 17, 2012 for the limited purpose of classifying Betavits under Heading 3204 pursuant to ARI 1(a).